IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL CURRAN,<br>    Plaintiff,<br><br>   v.<br><br>CITY OF PHILADELPHIA,<br>JOHN/JANE DOE #1-10, Individually and<br>as Police Officers for the City of<br>Philadelphia,<br>    Defendants. | CIVIL ACTION<br><br><br><br>NO. 20-3298 |

DuBois, J.                            November 12, 2020

## M E M O R A N D U M

### I.  INTRODUCTION

In this suit arising under 42 U.S.C. § 1983 and Pennsylvania state law plaintiff Michael Curran asserts claims against defendants City of Philadelphia ("City") and Police Officers John/Jane Doe #1-10 ("Doe Officers") for the Doe Officers' alleged excessive use of force and the City's alleged failure to properly train, supervise and discipline them. Presently before the Court is Defendant City of Philadelphia's Second Motion to Dismiss. For the reasons set forth below, the Motion is denied in part and granted in part.

### II.  BACKGROUND

"On or about July 2, 2018, [p]laintiff was approached by [Doe Officers] and arrested in the vicinity of B & Gurney Streets in the City of Philadelphia, Pennsylvania." Am. Compl. ¶ 8. "[Doe Officers] 'jumped' [plaintiff] whom they alleged had just purchased drugs, questioned, detained, and subsequently arrested him on criminal charges relating to drug possession." *Id*. ¶ 9. The Doe Officers then handcuffed plaintiff and placed him in a police van without seatbelts which they proceeded to drive erratically as they made additional arrests. *Id*. Once the van was

parked and plaintiff was allowed out, "he asked to speak to the arresting officer but was told by another officer: 'man, stop being a little bitch.'" *Id.* ¶ 10. "This officer then proceeded to punch [p]laintiff in the side with such ferocity that [p]laintiff immediately lost his breath and fell to the ground. He was then transported to a police district." *Id.*

While in a holding cell, plaintiff's breathing became "labored and erratic." *Id.* ¶ 11. "Plaintiff was thereafter transported by ambulance to Episcopal Hospital where he was diagnosed with a collapsed lung and operated on emergently." *Id.* ¶ 12. "From Episcopal Hospital he was taken to the Trauma Unit at Temple University Hospital where he remained [for five days], undergoing continued medical treatment." *Id.* ¶¶ 13, 14.

"Plaintiff was arraigned at the hospital for two misdemeanors: purchase of a controlled substance and possession of a controlled substance . . . ." *Id.* ¶ 14. "On January 4, 2019, the case was withdrawn by the Commonwealth and all criminal charges against him were dismissed." *Id.* ¶ 15.

On September 2, 2020, plaintiff filed a six-count[1] Amended Complaint. Count I sets forth claims against the Doe Officers under 42 U.S.C. §§ 1983 and 1988 for "[v]iolation of his constitutional rights, privileges and immunities under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania." *Id.* ¶ 22(a). Count II—the subject of the City's present Motion—asserts claims against the City under §§ 1983 and 1988[2] for failure to train, supervise and discipline its officers with respect to use of force and for violation of plaintiff's rights under the Fourth and Fourteenth

---

[1] The final count in the Amended Complaint is titled "Count V." However, the preceding two counts are both numbered Count IV. The Court considers these two counts separately and labels them accordingly.
[2] Because § 1988 only authorizes federal courts to "resort to remedies and procedures of the state and the common law . . . [and] does not create an independent cause of action," *Ammlung v. Chester*, 355 F. Supp. 1300, 1304 (E.D. Pa. 1973), *aff'd* 494 F.2d 811 (3d Cir. 1973), this Court does not address it in deciding defendant's Motion.

2

Amendments. Count III seeks punitive damages from the Doe Officers. Counts IV, V and VI assert claims against the Doe Officers for assault and battery, false imprisonment and intentional infliction of emotional distress, respectively.

In Count II of the Amended Complaint plaintiff identifies a number of "patterns, practices, and customs" pursuant to which the City violated his constitutional rights. *Id.* ¶ 29. These include, *inter alia*, "[u]nlawful use of force, unlawful detentions, unlawful arrests, and malicious prosecutions, *id.* ¶ 29(a); "failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct," *id.* ¶ 29(d); and "physical assault by police officers." *Id.* ¶ 29(h). Plaintiff alleges that as a result of the Doe Officers' actions and the deliberate indifference of the City, he suffered "[v]iolation of his constitutional rights . . . in particular, his rights to be free in his person, to be free of unreasonable searches and seizures, to be free of excessive force, and to due process and equal protection under the law." *Id.* ¶ 45(a).

On September 22, 2020 the City moved to dismiss Count II of the Amended Complaint. Plaintiff responded on October 26, 2020. The Motion is thus ripe for decision.

### III.   LEGAL STANDARD

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. *Liou v. Le Reve Rittenhouse Spa, LLC*, No. CV 18-5279, 2019 WL 1405846, at *2 (E.D. Pa. Mar. 28, 2019) (DuBois, J.). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility

of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680.

## IV. APPLICABLE LAW

Municipal liability under 42 U.S.C. § 1983 is governed by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A plaintiff seeking to hold a municipality liable for a civil rights violation caused by a municipal employee must prove (1) the existence of a custom or policy of the municipality (2) pursuant to which the municipality's employee violated the plaintiff's civil rights. *Monell*, 436 U.S. at 694; *see also Bryan Cnty.*, 520 U.S. at 403; *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000). Municipalities cannot be found vicariously liable under the doctrine of *respondeat superior* for claims that their employees violated an individual's civil rights. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).

A municipal "policy" may arise from the "decisions of [a municipality's] duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bryan Cnty.*, 520 U.S. at 403-04. A municipal "custom" is a practice that is "so widespread as to have the force of law," though the practice "has not been formally approved by an appropriate decisionmaker." *Id.* at 404. After establishing that a specific government policy or custom exists, a plaintiff must prove that "the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and

the deprivation of federal rights." *Id.* (requiring the municipality's deliberate conduct to be the "'moving force' behind the injury alleged"). If the alleged municipal action does not facially violate federal law, a plaintiff must demonstrate that "the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Berg*, 219 F.3d at 276 (quoting *Bryan Cnty.*, 520 U.S. at 407). "A showing of simple or even heightened negligence [is] not suffic[ient]" to prove deliberate indifference. *Bryan Cnty.*, 520 U.S. at 407.

V. **DISCUSSION**

In its Motion, the City contends that plaintiff fails to state a *Monell* claim because (1) he has not sufficiently alleged the existence of a municipal policy or custom that caused his injury and (2) he fails to allege conduct by a municipal policymaker. Mot. Dismiss, 4, 6. The Court evaluates each argument in turn and determines that plaintiff has sufficiently alleged a *Monell* claim for failure to train.

**A. Municipal Policy or Custom**

In the Amended Complaint, plaintiff identifies the following practices or customs of the City, which allegedly caused his injuries: (1) "a longstanding history of . . . physical assault by police officers against the citizens of the Commonwealth;" (2) failure to train police officers in order to prevent "this type of behavior;" and (3) inadequate investigation and/or disciplining of police officers for alleged incidents of "this type of behavior." Am. Compl. ¶ 35. Plaintiff does not allege the existence of an unconstitutional policy, therefore the Court evaluates only whether he sufficiently avers a practice or custom. For the following reasons, the Court determines that plaintiff's claims regarding the City's failure to train—but not those regarding the City's failure to supervise and/or discipline—are sufficient to allege a practice or custom.

### i. Failure to Train

*Monell* liability may be predicated upon the theory that the municipality's failure to train its employees "reflect[s] a deliberate or conscious choice by policymaking officials, such that one could call it the [municipality's] policy or custom." *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference." *Id.* at 53 (citations omitted).

Plaintiff relies on the facts reported in two 2019 newspaper articles in alleging his failure to train claim.[3] In evaluating the sufficiency of this claim, the Court examines whether plaintiff has properly alleged (1) deliberate indifference to a deficiency in the police training "program" as a whole, *see Bryan Cty.*, 520 U.S. at 407 (a failure to train claim turns on the deficiency of the "program" as a whole and its application "over time to multiple employees"); and (2) a causal nexus between that deficiency and his alleged injuries. *See Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991). Applying this analysis, the Court concludes that plaintiff's reliance on one article, *How a Flawed System Hid a Philly Police Commander's Sexual Misconduct for 15 Years*, Phila. Inquirer, Dec. 5, 2019 ("December 2019 Article"), is misplaced.

---

[3] A district court deciding a motion to dismiss will not typically consider documents that are not attached to or incorporated by reference in the pleadings. "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (quoting *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1220 (1st Cir.1996)). Plaintiff explicitly relies upon the two 2019 articles in the Amended Complaint and attaches them to his Response to the Motion. The Court thus considers the articles when ruling on defendant's Motion.

However, the second article, *Fired, Then Rehired*, Phila. Inquirer, Sept. 12, 2019 ("September 2019 Article"), combined with plaintiff's allegations regarding causation, is minimally sufficient to allow plaintiff's failure to train claim to proceed.

The December 2019 Article details a history of sexual abuse perpetrated by an inspector on the force. The Court determines that this article provides no support for plaintiff's failure to train claim because (1) the misconduct of a single officer is insufficient to establish a deficiency in the "program" as a whole; and (2) that officer's sexual misconduct is not relevant to the issues involved in plaintiff's failure to train claim. There is no causal link between that officer's sexual misconduct and the alleged physical assault at issue in this case.

The September 2019 Article, on the other hand, supports plaintiff's claims that the City's training program was deficient and that the City's failure to improve its training in light of a "pattern of similar constitutional violations" caused his injuries. The article reports that, between 2011 and 2019, 170 incidents of police misconduct were inadequately addressed by the City and unreported to the public. Many of the reported incidents involved the excessive use of force, which supports plaintiff's claim that the program's deficiencies were so "rampant" that another similar incident, like the one in this case, was likely to occur. Am. Compl. ¶ 35.

Plaintiff further alleges causation by stating that as a result of the City's failure to train its officers in the proper use of force, his constitutional rights—including his right "to be free of excessive force"—were violated. *See* Am. Compl. ¶¶ 44-46. Although these allegations, read in isolation are broad, the Court determines that, in combination with the facts reported in the September 2019 Article, they sufficiently allege causation. Typically, "[a]s long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused

the constitutional infringement should be left to the jury." *Watson v. Abington Twp.*, 478 F.3d 144, 157 (3d Cir. 2007)(citations omitted).

Thus, at this stage in the litigation, the Court determines that plaintiff has properly alleged that a deficiency in the City's training program caused his injuries. The Court therefore concludes that plaintiff has adequately pled the existence of a municipal custom of failing to properly train with respect to use of force by police officers.

    ii.  *Failure to Supervise or Discipline*

Plaintiff relies on the same two newspaper articles to support his failure to discipline claim.[4] However, the Court determines that, in the failure to discipline context, these allegations are insufficient because—unlike in the failure to train context—in alleging a failure to discipline claim, "it is not enough for the plaintiff to establish merely that the disciplinary process was inadequate." *McDaniels v. City of Phila.*, 234 F. Supp. 3d 637, 645 (E.D. Pa. 2017). Rather, "a city may be liable for its failure to discipline an officer after multiple complaints against him, particularly where the prior conduct which the officer engaged in is similar to the conduct which forms the basis for the suit." *Id.* (quoting *Wnek v. City of Phila.*, No. 05-3065, 2007 WL 1410361, at *3 (E.D. Pa. May 10, 2007)). "[T]he plaintiff must show that the city's failure amounted to 'deliberate indifference to the rights of persons with whom the police come into contact.'" *Id.* (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996)).

The Amended Complaint in this case does not identify the Doe Officers, the existence of previous complaints against them, or the identity or misconduct of their supervisor(s). Unlike *Beck v. City of Pittsburgh*, in which the court upheld a failure to discipline claim, in part because a police officer had been the subject of five complaints involving the use of excessive force, in

---

[4]  Plaintiff does not distinguish between his failure to supervise and failure to discipline claims. Thus, the Court refers to these claims collectively as plaintiff's "failure to discipline claim."

this case, plaintiff does not allege that the Doe Officers had been the subject of any prior complaints. *Id.* In short, the allegations in the Amended Complaint are insufficient to allow plaintiff's failure to discipline the Doe Officer's claim to proceed. Accordingly, on the present state of the record, the Court grants defendant's Motion to the extent it seeks dismissal of plaintiff's failure to discipline claim.

### B. Conduct by a Policymaker

In its Motion, the City also contends that plaintiff fails to state a *Monell* claim because he does not identify a policymaker whose conduct gave rise to his alleged injuries. Mot. Dismiss, 6. The Court disagrees.

To establish municipal liability under § 1983, a plaintiff must allege "execution of a government's policy or custom . . . by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" or "indifference on the part of a particular policymaker or policymakers." *Simmons v. Philadelphia*, 947 F.2d 1042, 1059-61 (3d Cir. 1991). "The question of who is a 'policymaker' is a question of state law [to] determine which official has final, unreviewable discretion to make a decision or take an action." *Andrews v. Philadelphia*, 895 F.2d 1469, 1481 (3d Cir. 1990) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). For purposes of determining municipal liability for police department policies, police commissioners and the mayor are policymakers. *Id.*

In this case, plaintiff alleges deliberate indifference on the part of Commissioner Ross, Mayor Kenney, Controller Rhynhart and, through them, the City. *See* Am. Compl. ¶ 42. Plaintiff avers that Ross, Kenney and Rhynhart had policymaking authority and that their "acquiescence to a well settled custom and practice" permitted the Doe Officers to use excessive force against him. *Id*. The Court determines that plaintiff's claims regarding Controller

9

Rhynhart are insufficient to support a *Monell* claim because plaintiff says nothing about her conduct in the Amended Complaint and the September 2019 Article does not identify her as a policymaker.  However, plaintiff's allegations regarding Mayor Kenney and Commissioner Ross are sufficient to support a *Monell* claim because the September 2019 Article identifies them as policymakers who knew about the "rampant commission of constitutional violations by [the] police" but failed to implement lasting remedial measures.  Am. Compl. ¶ 35.  Plaintiff alleges sufficient facts to infer "indifference on the part of a particular policymaker" on behalf of the City.  The Court therefore concludes that plaintiff has properly alleged a *Monell* claim based on the conduct of Mayor Kenney and Commissioner Ross.

## VI.   CONCLUSION

For the foregoing reasons, Defendant City of Philadelphia's Second Motion to Dismiss is denied in part and granted in part.  To the extent that the City seeks dismissal of plaintiff's failure to train claim, the Motion is denied.  To the extent that the City seeks dismissal of plaintiff's failure to discipline or supervise claim, the Motion is granted.  In the event plaintiff is able to identify the officers he claims were improperly supervised or disciplined and seeks to amend the Amended Complaint, he may petition the Court for leave to file a second amended complaint if warranted by the facts and applicable law as stated in this Memorandum.

An appropriate order follows.